UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
CFSP 2024-AHP1 147-03 NORTHERN BOULEVARD LLC,

Plaintiff,

-against-

FLUSHING REALTY NY LLC *et al.*,

Defendants.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
25-CV-2768 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On May 16, 2025, Plaintiff CFSP 2024-AHP1 147-03 Northern Boulevard LLC ("CFSP") initiated this action against Defendants Flushing Realty NY LLC ("Flushing Realty" or the "Borrower"), Joel Wiener ("Wiener" or the "Guarantor") (together, "Defendants"), the New York City Environmental Control Board ("ECB"), and John Doe No. 1 through John Doe No. 100.[1] Compl., ECF 1, ¶¶ 1, 6–11. Plaintiff seeks to foreclose a mortgage lien encumbering a property located at 147-03 Northern Boulevard a/k/a 35-33 147th Street, Flushing, New York 11354 (the "Property"),[2] pursuant to the governing loan documents.[3] *Id.* ¶¶ 1, 3. Specifically, Plaintiff seeks to foreclose and sell

---

[1] Defendants John Doe No. 1 through John Doe No. 100 are unknown persons or entities joined as party defendants because they may have some interest in or lien upon the property Plaintiff seeks to foreclose. Compl., ECF 1, ¶ 11. However, Plaintiff requests the Court amend the caption to strike the "John Doe" defendants. Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Mem."), ECF 30-34, at 1. The request is granted.

[2] The Property Description attached as Exhibit 1 to Plaintiff's complaint contains a more detailed description of the Property. *See* Property Description, ECF 1-1.

[3] *See* Consolidation, Modification, and Extension Agreement ("CMEA"), arts. 12–13, ECF 30-5, at ECF pp. 54–65 (describing the parties' obligations and remedies in the event of a default).

the Property to satisfy Plaintiff's damages, consisting of $4,253,901.95 in principal plus accrued fees and interest. *Id.* ¶¶ 3, 63.

Currently pending before this Court is Plaintiff's motion for summary judgment against the Borrower and the Guarantor and for default judgment against Defendant ECB. *See* Mot. for Summ. J. & Default J. ("Mot."), ECF 30; Mem., ECF 30-34. For the reasons set forth below, the Court grants Plaintiff's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

#### A. The Loan Documents

This case arises out of a loan, secured by a note and mortgage, that Defendant Flushing Realty took out on a residential property located at 147-03 Northern Boulevard, Flushing, New York 11354.[4] Compl., ECF 1, ¶¶ 1–2.

On June 12, 2015, the Borrower executed an Amended and Restated Mortgage Note (the "Note") to repay New York Community Bank (the "Original Lender") $4,630,000.00 plus interest. Pl.'s 56.1, ECF 30-1, ¶¶ 4–6; *see* Note & Allonges, ECF 30-4. Also on June 12, 2015, to secure its indebtedness under the Note, the Borrower executed a Consolidation, Modification, and Extension Agreement (the "CMEA") which contained a mortgage (the "Mortgage"), an assignment of leases and rents ("ALR") and a security agreement (the "Loan Agreement"), under which the Borrower assigned to the Original Lender all existing and future leases and rents, and which conferred upon the Borrower a revocable license to collect and retain the rents as they become due and

[4] The Property Plaintiff seeks to foreclose is residential. CMEA, ECF 30-5, at ECF p. 26 ("The property is used exclusively as residential apartments." (emphasis omitted)); *see* ALR, ECF 30-8, at ECF p. 2 (categorizing the Property as an apartment building).

payable. Pl.'s 56.1, ECF 30-1, ¶¶ 7–9; *see* CMEA, ECF 30-5, at ECF pp. 14–15. The CMEA was recorded on June 26, 2015. Pl.'s 56.1, ECF 30-1, ¶ 8; *see* CMEA, ECF 30-5, at ECF p. 2. Also on June 12, 2015, the Guarantor executed a Guaranty of Recourse Obligations (the "Guaranty") to and for the benefit of the Original Lender. Pl.'s 56.1, ECF 30-1, ¶ 14; *see* Guaranty, ECF 30-9.

On December 18, 2020, the Borrower and the Original Lender entered into a Mortgage Modification Agreement (the "Modification"), which modified the Note, CMEA, Mortgage, ALR, and Guaranty (together with the Modification, the "Loan Documents") to amend the principal balance of the loan to $4,287,773.62. Pl.'s 56.1, ECF 30-1, ¶ 15; *see* Modification, ECF 30-10. The Modification was recorded on November 8, 2021. Pl.'s 56.1, ECF 30-1, ¶ 15; *see* Modification, ECF 30-10, at ECF p. 2.

Effective December 1, 2022, the Original Lender merged with Flagstar Bank, N.A. ("Flagstar"). Pl.'s 56.1, ECF 30-1, ¶ 16. On December 30, 2024, Flagstar, as successor in interest to the Original Lender, executed and delivered an assignment of mortgage (the "First Assignment"), an allonge to the Note (the "First Allonge"), and an assignment of leases and rents (the "First ALR") in favor of CF SPG Depositor LLC ("CF"). Pl.'s 56.1, ECF 30-1, ¶¶ 17–19; *see* First Assign., ECF 30-11; Note & Allonges, ECF 30-4, at ECF p. 20; First ALR, ECF 30-12. The First Assignment and First ALR were recorded on January 23, 2025. First Assign., ECF 30-11, at ECF p. 2; First ALR, ECF 30-12, at ECF p. 2.

Also on December 30, 2024, CF executed and delivered an assignment of mortgage (the "Second Assignment"), allonge to the Note (the "Second Allonge"), and assignment of leases and rents (the "Second ALR") in favor of Computershare Trust Company, N.A. ("Computershare Trust" or the "Interim Holder"). Pl.'s 56.1, ECF 30-1, ¶¶ 20–22; *see* Second Assign., ECF 30-13; Note & Allonges, ECF 30-4, at ECF p. 21; Second ALR, ECF 30-14. The Second Assignment and Second ALR were also recorded

on January 23, 2025. *See* Second Assign., ECF 30-13, at ECF p. 2; Second ALR, ECF 30-14, at ECF p. 2.

On April 15, 2025, the Interim Holder executed and delivered an assignment of mortgage (the "Third Assignment"), allonge to the Note (the "Third Allonge"), and assignment of leases and rents (the "Third ALR") in favor of Plaintiff. Pl.'s 56.1, ECF 30-1, ¶¶ 23–26; *see* Third Assign., ECF 30-15; Note & Allonges, ECF 30-4, at ECF p. 23; Third ALR, ECF 30-16. The Third Assignment and Third ALR were recorded on May 8, 2025. *See* Third Assign., ECF 30-15, at ECF p. 2; Third ALR, ECF 30-16, at ECF p. 2.

**B. Loan Document Terms and Event of Default**

Under the CMEA, the Borrower was obligated to repay the Mortgage "in the amount required to amortize the unpaid principal balance of [the] Note in equal monthly installments" on the first day of every month. Pl.'s 56.1, ECF 30-1, ¶ 31 (quotation marks omitted); *see* Note & Allonges, ECF 30-4, ¶ 3(c). As the Guarantor, Defendant Wiener agreed to be held liable for the "prompt and complete payment" of any debts not delivered in accordance with the Loan Documents, as well as all fees and costs related to the enforcement of the Guaranty. Guaranty, ECF 30-9, at ECF pp. 4–5.

Under Section 12.2(1)(a) of the CMEA, any failure by the Borrower to "pay or deposit when due . . . any amount required by the Note, this Mortgage or any other Loan Document" is deemed an "Event of Default." CMEA, ECF 30-5, at ECF p. 55; *see also* Pl.'s 56.1, ECF 30-1, ¶¶ 29–30. The CMEA also provides that following a default, Plaintiff "may declare the unpaid portion of the [Mortgage, interest, and other costs] to be immediately due and payable." CMEA, ECF 30-5, at ECF p. 57.

Plaintiff contends, and Defendants dispute, that Borrower failed to make the required monthly payments for the months beginning January 1, 2025, through May 1, 2025; the last payment made towards the Loan was made on January 14, 2025, which

was the required monthly payment due on December 1, 2024. Pl.'s 56.1, ECF 30-1, ¶¶ 32–33; *see* Transaction History, ECF 30-18; *see also* Defs.' Counter-56.1, ECF 32-1, ¶¶ 32–33; Wiener Decl., ECF 32-3, ¶¶ 16–17 (stating that "Borrower made payments and/or engaged in payment activity after January 2025 that is not fully or accurately reflected in Plaintiff's submissions" and that "[t]o the extent payments were not credited, such failure is attributable to Plaintiff's accounting or application of payments").

The Mortgage provides the Borrower a 10-day period to cure any monetary default following written notice to the Borrower. Pl.'s 56.1, ECF 30-1, ¶ 34; *see* CMEA § 15.1, ECF 30-5, at ECF p. 66. On April 17, 2025, Plaintiff notified the Borrower and Guarantor of the events of default described above and demanded that the Borrower cure the default within ten days, via a letter sent to the address Plaintiff had on file for Defendants. Pl.'s 56.1, ECF 30-1, ¶ 39; *see* Notice of Default, ECF 30-19. The following day, April 18, 2025, Plaintiff was notified that the Notice of Default was not delivered because Defendants had moved; that same day, Plaintiff's counsel located a new address for the Borrower and re-sent the Notice, of which mailing the Guarantor acknowledged receipt via email on April 22, 2025. Pl.'s 56.1, ECF 30-1, ¶¶ 40–41; *see* Galati Decl., ECF 30-23, ¶¶ 3–5.

On April 30, 2025, Plaintiff notified the Borrower and Guarantor via letter that, due to the Borrower's failure to cure the default within the ten-day cure period, Plaintiff had elected to accelerate the loan, and that all amounts due under the Mortgage (including the unpaid principal balance, all accrued interest, and the pre-payment premium) were immediately payable. Pl.'s 56.1, ECF 30-1, ¶¶ 46–48; *see* Notice of

Acceleration, ECF 30-20, at 2 (declaring "the Secured Obligations to be immediately due and payable" (emphasis omitted)).

Plaintiff avers that as of March 20, 2026, there was $5,152,513.09 due to Plaintiff under the Loan documents, consisting of (1) $4,253,901.95 in unpaid principal; (2) $121,959.96 in unpaid interest on the Loan's unpaid principal from December 1, 2024, to April 28, 2025, accruing at 7.125% (December 2024) and 6.875% (January 1, 2025 through April 28, 2025); (3) $770,428.91 in unpaid interest accruing at the 20% default rate on the Loan's unpaid principal for the 326 days from April 29, 2025, to March 20, 2026; and (4) $6,223.85 in late charges, minus a $1.58 Debt Service Reserve fee. *See* Mem., ECF 30-34, at 14; Pl.'s 56.1, ECF 30-1, ¶¶ 50–59.

**II. Procedural History**

As noted above, Plaintiff commenced this action on May 16, 2025. *See generally* Compl., ECF 1.[5] On June 24 and 26, 2025, Plaintiff filed certificates of service indicating that (1) Wiener was served on June 18, 2025, rendering his answer due July 9, 2025; (2) Flushing Realty was served on June 4, 2025, rendering its answer due June 25, 2025; and (3) ECB was served on June 3, 2025, rendering its answer due June 24, 2025. *See* Certificates of Service, ECF 6, ECF 7, ECF 8. Defendants Flushing Realty and Wiener

[5] Plaintiff is a limited liability company of which its sole member, Computershare Trust, is a citizen of Massachusetts. Compl., ECF 1, ¶¶ 4–5; Pl.'s 56.1, ECF 30-1, ¶ 1. Defendant Flushing Realty is a limited liability company whose sole members, Joel Wiener and Sherry Wiener, are citizens of New York. Rule 7.1 Disclosure, ECF 37; *see also* Pl.'s 56.1, ECF 30-1, ¶ 2; Defs.' Counter 56.1, ECF 32-1, ¶ 2. Defendant Wiener is an individual domiciled in New York. Defs.' Counter 56.1, ECF 32-1, ¶ 3. Defendant ECB is a New York judiciary tribunal and is therefore a citizen there. Compl., ECF 1, ¶ 10. The amount in controversy is well over $75,000. *See* Compl., ECF 1, ¶ 63 (stating that, as of the date of the filing of the complaint, Plaintiffs were owed $4,253,901.95 in principal); *see* Pl.'s 56.1, ECF 30-1, ¶ 59 (stating that as of March 20, 2026, there was $5,152,513.09 plus interest accruing due to Plaintiff under the Loan Documents). Accordingly, the Court has subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332.

filed an answer on July 10, 2025. Answer, ECF 9. To date, Defendant ECB has not filed an answer. *See generally* Docket.

On July 10, 2025, Plaintiff filed a motion for emergency relief to appoint a receiver. *See* Mot. to Appoint Receiver, ECF 10. On November 13, 2025, Plaintiff's motion was granted, and on December 4, 2025, the Court appointed Chris Neilson as receiver. Mem. & Order, ECF 20; Order Appointing Receiver, ECF 22.

On February 9, 2026, Plaintiff filed a request for a certificate of default as to Defendant ECB, which was granted on February 13, 2026. Req. for Certificate of Default, ECF 25; Entry of Default, ECF 28. Also on February 9, 2026, Plaintiff and Defendants submitted a joint status report, advising that Plaintiff intended to file a motion for summary judgment; the following day, Plaintiff filed a letter requesting a pre-motion conference on the anticipated motion, which was denied as unnecessary. Letter, ECF 26; Req. for Pre-Mot. Conference, ECF 27; Feb. 18, 2026 ECF Order. On February 26, 2026, the Court entered the parties' proposed briefing schedule on the anticipated motion. Feb. 26, 2026 ECF Order.

On March 20, 2026, Plaintiff moved for summary judgment against Defendants Flushing Realty and Wiener and for default judgment against Defendant ECB. Mot., ECF 30. On April 15, 2026, Defendants Flushing Realty and Wiener filed their opposition. Opp'n, ECF 32. On April 29, 2026, Plaintiff filed a reply in support. Reply, ECF 33.

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Further, a factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The Court "must view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in [the non-movant's] favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Id.* (alterations and quotation marks omitted).

"The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "'the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (emphasis in original) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted)); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].").

Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Further, Rule 56(c) provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see Lener v. Hempstead Pub. Schs.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When determining whether a movant is entitled to summary judgment, courts do not weigh the evidence or make credibility determinations to decide the truth of the matter, but instead determine "'whether there is a genuine issue for trial.'" *Green v. Town of E. Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (quoting *Anderson*, 477 U.S. at 249). District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020) (quotation marks omitted).

**B. New York Mortgage Foreclosure**

"In a foreclosure action under New York law, a plaintiff can establish its *prima facie* entitlement to summary judgment by producing evidence of the mortgage, the unpaid note, and the defendant's default." *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570 (SJ) (RER), 2021 WL 9494173, at *3 (E.D.N.Y. Mar. 16, 2021). "Once a mortgagee's *prima facie* case is established, the mortgagor must make an affirmative

showing that a defense to the action exists." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 80 (E.D.N.Y. 2019) (quotation marks omitted), *remanded*, No. 19-0471-cv, 2025 WL 2233400 (2d Cir. Aug. 6, 2025) (summary order), *vacated on reconsideration on other grounds*, 802 F. Supp. 3d 445 (E.D.N.Y. 2025), *appeal filed*, No. 25-2980-cv (2d Cir. Nov. 24, 2025). If the defendant-mortgagor contests the plaintiff-mortgagee's standing to foreclose, "the plaintiff must prove its standing as part of its prima facie showing." *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 336 (2d Cir. 2021) (quotation marks omitted). "A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that it is either the holder or assignee of the underlying note at the time the action is commenced." *Bank of New York Mellon v. Gordon*, 97 N.Y.S.3d 286, 292 (App. Div. 2d Dep't 2019) (quotation marks omitted).

In addition to the common law elements of its *prima facie* case discussed above, the party moving for summary judgment in a mortgage foreclosure action must demonstrate statutory compliance with the New York Real Property Actions and Proceedings Law ("RPAPL"). *See CIT Bank, N.A. v. Anderson*, No. 16-CV-1712 (ERK) (PK), 2019 WL 3842922, at *1 (E.D.N.Y. Aug. 14, 2019); *Blue Castle (Cayman) Ltd. v. Tawil*, No. 24-CV-1082 (MKB) (TAM), 2025 WL 2482306, at *4 (E.D.N.Y. Aug. 28, 2025). Under RPAPL § 1303, a foreclosing party in an action involving residential real property must provide notice to "(a) any mortgagor if the action relates to an owner-occupied one-to-four family dwelling; and (b) any tenant of a dwelling unit," with specific formatting and content requirements for such notices. RPAPL § 1303(1)–(4); *see also id.* § 1305(3) ("[A] successor in interest of residential real property shall provide written notice to all tenants in the same manner as required by [§ 1303(4)] . . . ."); *see also* N.Y. Real Prop. L. § 265-a (Home Equity Theft Prevention Act).

The required § 1303 notice for tenants of a multi-unit building must contain specific language, starting with "Notice to Tenants of Buildings in Foreclosure[.] New York State Law requires that we provide you this notice about the foreclosure process. Please read it carefully," and include a paragraph, in all capitalized and underlined letters, regarding tenant rights and protections. RPAPL § 1303(5); *see also id.* § 1303(4). Additionally, the notice must be in bold, 14-point type, printed on colored paper (other than the color of the summons and complaint), and the title of the notice must be in bold, 20-point type. *Id.* § 1303(4). Section 1303 notices must "be delivered with the summons and complaint," and for buildings with five or more dwelling units, posted on the outside of each entrance and exit of the building. *Id.* § 1303(2), (4).

**C. Default Judgment**

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered and on the plaintiff's application, the district court may enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Loc. Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual

circumstances of a given case and to evaluate the credibility and good faith of the parties."[6] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id*. It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest*., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Section 1311 of the RPAPL identifies the necessary defendants in a mortgage foreclosure action, providing that persons "whose interest is claimed to be subject and subordinate to the plaintiff's lien, shall be made a party defendant to the action," including "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311. "This rule 'derives from the underlying objective of foreclosure actions — to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale.'" *NDF1, LLC v. Cunningham*, 754 F. Supp. 3d 273, 285 (E.D.N.Y. 2024) (quoting *Bank of Am., N.A. v. 3301*

[6] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiff's motion papers substantially comport with these rules. First, Plaintiff requested a certificate of default in accordance with Local Rule 55.1(a)(1), which was served on Defendant ECB via first class mail. *See* Req. for Certificate of Default, ECF 25. Second, Plaintiff has demonstrated that Defendant ECB has failed to defend the action and that the pleadings were properly served. *See* Aff. of Service, ECF 8. Third, Plaintiff demonstrated that Defendant ECB, as an entity, is not a minor, incompetent, or subject to the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3931. *See* Req. for Certificate of Default, ECF 25. Finally, Plaintiff has certified the mailing of all of the default motion papers to Defendant ECB. *See* Certificate of Service, ECF 35.

*Atl., LLC*, No. 10-CV-5204 (FB) (SMG), 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (internal quotation marks omitted)).

In the case of a non-mortgagor defendant, entry of default judgment may be appropriate where "the complaint alleges nominal liability, *i.e.,* that any judgments or liens a defendant may have against the property are subject and subordinate to plaintiff's lien." *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Harilal*, No. 19-CV-7034 (CBA) (JRC), 2022 WL 16754569, at *5 (E.D.N.Y. Aug. 30, 2022) (quotation marks omitted), *report and recommendation adopted*, 2022 WL 4596734 (E.D.N.Y. Sept. 30, 2022). After entry of a default judgment against a joined defendant with a nominal interest, "any such interest in the relevant property is terminated." *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (quotation marks omitted), *vacated on other grounds*, 2026 WL 873093 (E.D.N.Y. Mar. 30, 2026).

Courts apply a heightened pleading standard for municipal defendants, like the ECB, to determine whether Plaintiff has established nominal liability. *See id.* This standard requires the complaint to allege "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant."[7] RPAPL § 202-a(1). If the non-mortgagor defendant is a city entity,

[7] Documentary proof of the city's interest or lien is usually necessary and sufficient to satisfy the heightened standard for pleading nominal liability against city defendants. *See Fed. Nat'l Mortg. Ass'n v. 2120 Tiebout LLC*, No. 23-CV-9445 (DEH), 2025 WL 1503957, at *6 (S.D.N.Y. May 27, 2025) (collecting cases in the Second Circuit requiring documentation identifying the existence and nature of the ECB violation to satisfy RPAPL § 202-a(1)'s pleading requirements);

and the lien exists due to a judgment, the complaint must include "the name of the court, date recorded, clerk's office in which filed, the names of the parties against whom and in whose favor such judgment was recovered and a brief description of the grounds for or the nature of such judgment." *Id.* § 202-a(2).

## II. Analysis

### A. Note, Mortgage, and Proof of Default

"A plaintiff is entitled to foreclose on a property if it demonstrates the existence of an obligation secured by a mortgage, and a default on that obligation." *OneWest Bank, N.A. v. Denham*, No. 14-CV-5529 (DRH) (AKT), 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015) (quotation marks omitted), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015). Here, Plaintiff has provided sufficient evidence to demonstrate the existence of the Note and Mortgage. *See* Pl.'s 56.1, ECF 30-1, ¶¶ 4–26; Note & Allonges, ECF 30-4; CMEA, ECF 30-5; *see also* First Assign., ECF 30-11; First ALR, ECF 30-12; Second Assign., ECF 30-13; Second ALR, ECF 30-14; Third Assign., ECF 30-15; Third ALR, ECF 30-16. Although Defendants challenge Plaintiffs' standing to commence this action as the assignee and/or holder of the Note, as discussed *infra*, they do not meaningfully dispute the existence of the underlying documents. *See generally* Opp'n, ECF 32.

---

*Wells Fargo Bank Nat'l Ass'n as Tr. for Holders of COMM 2014-UBS6 Mortg. Tr. Com. Mortg. Pass-Through Certificates v. 366 Realty LLC*, No. 17-CV-3570 (KAM) (JAM), 2024 WL 4891739, at *10 (E.D.N.Y. Nov. 26, 2024) (A "plaintiff must substantiate their allegations with documentation, such as a title report."), *report and recommendation adopted sub nom. Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, 2025 WL 556036 (E.D.N.Y. Feb. 20, 2025); *see also CIT Bank v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *6 (E.D.N.Y. Sept. 25, 2015) (finding title search documents showing monies the defendants owed to the ECB sufficient to support the plaintiff's allegations of liens), *report and recommendation adopted sub nom. CIT Bank, N.A., v. Dambra*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015).

Having produced the Note and the Mortgage, Plaintiff must next show that Defendants have defaulted in paying the loan to establish a *prima facie* case. *Baez*, 2020 WL 4261130, at *3. Plaintiff has submitted evidence that Defendant Flushing Realty "failed to make the Required Monthly Payments that were due on the first day of each month from January 1, 2025, through and including May 1, 2025 . . . [and] has made no payments of any kind toward the Loan since January 14, 2025." Pl.'s 56.1, ECF 30-1, ¶¶ 32–33; *see* Transaction History, ECF 30-18. The Court also notes that under § 12.2 of the CMEA, any failure by Defendants to remit the monthly payments constitutes an event of default. CMEA, ECF 30-5, at ECF pp. 55–57. The CMEA also states that, upon default, the lender "may declare the unpaid portion of the Secured Obligations to be immediately due and payable, without any presentment, demand, protest, notice or action of any kind." *Id.* at ECF p. 57. Accordingly, Plaintiff has advanced sufficient evidence to establish Defendants' default.

Defendants object to Plaintiff's proof of default on two grounds. First, Defendants claim that the notice of default — which triggered a ten-day period allowing Defendants to cure the default — was improperly delivered.[8] Defs.' Counter 56.1, ECF 32-1, ¶¶ 37, 39–42, 48–49; *see* Wiener Decl., ECF 32-3, ¶¶ 3–14. Specifically, Defendants assert that the "alleged Notice of Default was not delivered in accordance with the notice provisions of the Mortgage and therefore was ineffective to trigger any

---

[8] As set forth above, Plaintiff first sent Defendants a notice of default on April 17, 2025, and the next day, received a notification that the notice was not delivered because Defendants had moved without apprising Plaintiff of their change in address. Pl.'s 56.1, ECF 30-1, ¶¶ 39–40; *see* Galati Decl., ECF 30-23, ¶ 3; Notice of Default, ECF 30-19 (addressed to Defendants at 1 Penn Plaza, Suite 4000, New York, New York 10119). That same day, April 18, 2025, counsel located a new address for the Borrower and re-sent the Notice, and on April 22, 2025, the Guarantor acknowledged receipt via email. Pl.'s 56.1, ECF 30-1, ¶¶ 40–41; *see* Galati Decl., ECF 30-23, ¶¶ 4–5; *see also* Notice of Acceleration, ECF 30-20 (addressed to Defendants at 2 Grand Central Tower, 140 E. 45th Street, 12th Floor, New York, New York 10017).

rights or obligations thereunder." Defs.' Counter 56.1, ECF 32-1, ¶ 39 (citing Wiener Decl., ECF 32-3, ¶¶ 3–10; CMEA, ECF 1-3; Notice of Default, ECF 1-16).

The relevant provisions of the Mortgage read as follows:

> **Section 13.1 Remedies.** If an Event of Default occurs, Lender may, at its option, but without obligation, exercise one or more or all of the following remedies: . . .
>
> > (2) Acceleration. Lender may declare the unpaid portion of the Secured Obligations to be immediately due and payable, without any presentment, demand, protest, notice or action of any kind (each of which hereby is expressly waived by Borrower), whereupon the Secured Obligations shall become immediately due and payable.
> >
> > . . . .
> >
> > (5) Foreclosure Proceedings. Lender may institute proceedings, judicial or otherwise, for the complete or partial foreclosure of this Mortgage and sale of all or any portion of the Property at public auction[.]
>
> **Section 15.1 Notice Period(s).** Notwithstanding any of the provisions contained herein to the contrary, the Lender shall provide the Borrower written notice of any default herein. If the Borrower is in default in the payment to the Lender of any sum or amount of money which may fall due or be payable from time to time under the term of the Agreement hereunder ("a Monetary Default"), the Borrower shall have a period of ten (10) days after the Lender's giving of such notice within which time such default must be cured.
>
> **Section 16.5 Notices.** All notices and other communications provided for under this Mortgage shall be in writing [and mailed], if to Borrower, to its address set forth in the preamble of this Mortgage . . . [or] at such other address as shall be designated by [the Borrower] in a written notice to the other party complying as to delivery with the terms of this Section.

CMEA, ECF 30-5, at ECF pp. 57, 59, 66, 69.

Here, Defendants cite no authority for the proposition that a technical defect in the provision of notice of default is a defense to foreclosure, particularly where, as here, the Mortgage does not require expressly notice as a condition precedent to foreclosure. *See generally* Opp'n, ECF 32; *cf.* 1 Bergman on N.Y. Mortg. Foreclosures §§ 4.04A

(observing that the "general rule is that demand for payment is not a prerequisite to commencement of a mortgage foreclosure action"), 4.05 (noting that mortgages can be drafted to "mandate notice of a claimed default as a precondition to exercise an acceleration"). Even assuming Defendants have not waived this argument by not briefing it, the record indicates that Defendants had ample notice of Plaintiff's intent to accelerate the debt and foreclose the Mortgage. Here, Plaintiff sent a notice of default to the address it had on file for Defendants, as per Section 16.5 of the Mortgage; when that was returned as undeliverable the next day, counsel re-sent the notice to a new address it located for the Borrower, and the Guarantor later acknowledged receipt of the notice. *See* Pl.'s 56.1, ECF 30-1, ¶¶ 39–41; *see* Galati Decl., ECF 30-23, ¶¶ 3–5; Notice of Default, ECF 30-19; Notice of Acceleration, ECF 30-20. As far as the Court is able to discern, notice was properly effectuated where, as here, the Borrower did not give the Lender notice of its change in address and the Lender promptly re-sent the notice to an address at which receipt was later confirmed.[9] *See supra* note 8; *cf.* CMEA, ECF 30-5, at ECF p. 24 ("Borrower agrees not to change its principal place of business without giving Lender at least thirty (30) days' prior notice so long as obligations are outstanding.").

Analogous facts allowed the court to reach the same conclusion in *FDIC v. Carbomin Group, Inc. See* 575 N.Y.S.2d 331, 333 (App. Div. 2d Dep't 1991). There, the court held that "it was clear that Carbomin was given adequate notice of the FDIC's intention to foreclose" because (1) the agreement provided that the FDIC, "upon notice,

---

[9] Indeed, taken to its logical conclusion, Defendants' position would seem to imply that if Plaintiff cannot notify Defendants of their default at the address Defendants initially provided to Plaintiff — because Defendants changed their address without notifying Plaintiff — Plaintiff would be divested of its right to foreclose the Mortgage. This is a nonsensical reading of the CMEA.

at its option, could commence a foreclosure proceeding," (2) the FDIC "sent two letters to Carbomin indicating that it would commence foreclosure proceedings," and (3) thereafter, the parties agreed on a timeline for the commencement of foreclosure proceedings. *Id.*

Accordingly, the Court finds that Defendants' objection to Plaintiff's proof of default on grounds that notice was not given as provided for in the Mortgage does not create a material dispute of fact as to whether Defendants defaulted on the Mortgage. *See id.*

Second, Defendants object to Plaintiff's "characterization of the payment history" and state that, rather than defaulting, "Borrower made payments and/or Plaintiff misapplied or failed to properly credit payments." Defs.' Counter 56.1, ECF 32–1, ¶¶ 32–33; *see* Wiener Decl., ECF 32-3, ¶¶ 15–18. Defendants do not state when they made payments towards the outstanding balance, or what amount was purportedly remitted and/or should have been credited towards the same, nor do they cite to any evidence in the summary judgment record beyond the Guarantor's declaration, which suffers from the same deficiencies. *See* Weiner Decl., ECF 32-3, ¶¶ 15–18 (asserting, with no specifics, that, *inter alia*, "Borrower made payments and/or engaged in payment activity after January 2025"). It is axiomatic that, in opposing a motion for summary judgment, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to create a genuine dispute of material fact; rather, "the non-movant must produce specific facts indicating that a genuine factual issue exists." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (quotation marks omitted). But even if the Court were to credit Defendants' unsubstantiated averments, "[a]llegations of partial payments remitted after default do not constitute a defense to a foreclosure action" because "[p]artial payment does not cure a default." *Bank of Am. Nat'l Ass'n v.*

*Commack Props., LLC*, No. 09-CV-5296 (DRH), 2010 WL 5139219, at *5 (E.D.N.Y. Dec. 10, 2010). Defendants' attempts to poke holes in Plaintiff's case do not identify a genuine dispute of material fact as to whether Defendants ceased making payments on the loan.

For the foregoing reasons, the Court finds that Plaintiff has sufficiently established evidence of the Note, Mortgage, and of Defendants' default.

**B. Plaintiff's Standing to Foreclose**

Defendants challenge Plaintiff's standing as either a holder or an assignee of the Note and Mortgage. *See generally* Opp'n, ECF 32. As discussed above, if the mortgagor contests the mortgagee's standing to foreclose, "the plaintiff must prove its standing as part of its prima facie showing," *Donovan*, 856 F. App'x at 336 (quotation marks omitted), which it may do "by demonstrating that it is *either* the holder or assignee of the underlying note at the time the action is commenced," *Gordon*, 97 N.Y.S.3d at 292 (quotation marks omitted) (emphasis added); *see Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 29 (2d Cir. 2017) (summary order) (noting that the plaintiff may "demonstrate that it was the holder or assignee of the mortgage and note when the action was commenced").

*1. Standing as the Holder of the Note*

The summary judgment record amply establishes that Plaintiff was the holder of the Mortgage and Note when this action was commenced, and therefore has standing to seek foreclosure of the Property.

Under New York law, proof of physical possession of a note prior to the commencement of the foreclosure is "sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016) (collecting cases); *see Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015). Where there are allonges attached to the note, the plaintiff is

"required to establish both that it physically possessed the note with an allonge at the time that [the] action was commenced and that the allonge was firmly affixed to the note." *LNV Corp. v. Allison*, 170 N.Y.S.3d 162, 165 (App. Div. 2d Dep't 2022); *see Courchevel 1850 LLC v. Alam*, 464 F. Supp. 3d 475, 480–81 (E.D.N.Y. 2020), *aff'd sub nom. Courchevel 1850 LLC v. Koznitz I LLC*, No. 23-7263-cv, 2025 WL 1512953 (2d Cir. May 28, 2025) (summary order). The affidavits of a plaintiff's corporate representative or counsel in the case can suffice as proof of physical possession of the note and allonges. *See Melina*, 827 F.3d at 223. For example, in *Aurora*, even though the plaintiff there produced an affidavit in lieu of the original mortgage note, and "the affidavit was lacking details regarding Aurora's possession of the note," the Court of Appeals held that the trial court's reliance on the affidavit alone to grant summary judgment to the plaintiff was not error, though it noted that "the better practice would have been for Aurora to state how it came into possession of the note." 25 N.Y.3d at 362.

Here, Plaintiff has produced the Note and allonges, and has averred that the three allonges "were all firmly affixed to the Note by a staple and in the possession of Plaintiff's counsel on the date Plaintiff commenced this action." Pl.'s 56.1, ECF 30-1, ¶ 25; *see* Galati Decl., ECF 30-23, ¶¶ 6–11 (noting that Plaintiff's counsel removed the staple from the top left corner of the Note, First Allonge, and Second Allonge in order to

scan the allonges into a single file and attach them to the complaint, and then re-stapled the Note, First Allonge, Second Allonge, and Third Allonge together).[10]

Defendants do not meaningfully dispute Plaintiff's proffered evidence with citations to the summary judgment record. Rather, they take issue with the fact that all three allonges were not firmly affixed to the Note at the time of delivery of the allonges to Plaintiff's counsel. *See* Defs.' Counter 56.1, ECF 32-1, ¶ 25; *see also* Defs. 56.1, ECF 32-2, ¶¶ 14–30. Specifically, Defendants contend that "a plaintiff relying on an allonge" to establish its status as a holder "must demonstrate both possession of the note and that the allonge was firmly affixed at the time of transfer." Opp'n, ECF 32, at 6. But whether "the plaintiff originally took possession of a note with loose allonges and then stapled them to the note after the fact" is "immaterial to its holder status," as long as the note and allonges are firmly affixed by the commencement of the foreclosure action. *Courchevel 1850 LLC*, 464 F. Supp. 3d at 481. Indeed, as the cases Defendants cite make clear, Plaintiff is "'required to establish both that it physically possessed the note with an allonge *at the time that this action was commenced* and that the allonge was firmly affixed to the note.'" Opp'n, ECF 32, at 6 (quoting *LNV Corp.*, 170 N.Y.S.3d at 165 (emphasis added)).

---

[10] Plaintiff's counsel states that on May 2, 2025, he "reviewed the original Loan file and confirmed the presence of the original Note with First Allonge and Second Allonge affixed to it by a staple in the top left corner of the documents," and "received a package from Edward Barrett of Newmark containing the Third Allonge signed by him." Galati Decl., ECF 30-23, ¶¶ 7–8. Although Plaintiff does not otherwise explain why the First and Second Allonges were delivered to Plaintiff separately from the Third Allonge, Defendants cite no authority to suggest that delivery of the allonges separately from the note is fatal to Plaintiff's standing where, as here, the Note and Allonges were in Plaintiff's physical possession and firmly affixed prior to the commencement of this action. *See Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015) ("In the current case, the note was transferred to Aurora before the commencement of the foreclosure action — that is what matters.").

Here, the three allonges were firmly affixed by the time the action was commenced. Pl.'s 56.1, ECF 30-1, ¶ 25; *see* Galati Decl., ECF 30-23, ¶¶ 6–11. The Court finds that Plaintiff has sufficiently established that Plaintiff physically possesses the relevant Note and Mortgage, and that the same was true upon the filing of this action. *See Melina*, 827 F.3d at 222. On the basis of the summary judgment record, Plaintiff has standing to foreclose as the holder of the Note.

2. *Standing as an Assignee of the Note*

Defendants also challenge Plaintiff's standing as an assignee. Specifically, Defendants contest the validity of the chain of assignments of the Mortgage, which they characterize as "internally inconsistent, altered, and unsupported by competent evidence establishing when the purported transfers occurred." Opp'n, ECF 32, at 4. The purported deficiencies include the fact that (1) the First Assignment is dated as of December 30, 2024, but the "notarial acknowledgments are dated December 18, 2024," indicating that "the notary purportedly acknowledged execution before the documents were signed," and (2) the Second Assignment was originally dated December 18, 2024, but this date was manually crossed out with a pen, replaced with December 30, 2024, and initialed "AG," and Plaintiffs do not indicate who made these alterations or when. *Id.* at 5; *see* First Assign., ECF 30-11, at ECF p. 6; Second Assign., ECF 30-13, at ECF p. 6. Defendants argue that courts "have rejected similar chains of assignments where the documents contain[ed] internal inconsistencies" or "contained chronological impossibilities." Opp'n, ECF 32, at 5 (citing *Hoyer*, 802 F. Supp. 3d 445).

However, as discussed above, Plaintiff has demonstrated its standing as the *holder* of the Note, and therefore need not additionally demonstrate its standing as an *assignee*. *See Rutty*, 720 F. App'x at 29 (explaining that under New York law, the plaintiff may demonstrate standing as either a holder or an assignee); *cf. Windward Bora, LLC v.*

*Regalado*, 751 F. Supp. 3d 122, 132 (E.D.N.Y. 2024) (finding, in summary judgment posture, that the plaintiff could proceed to trial on the question of whether it had standing as an assignee, even though it could not establish its standing as a holder), *appeal filed*, No. 26-1143-cv (2d Cir. Apr. 29, 2026). "'[B]ecause an assignment may be made under New York law by physical delivery and not only by written indorsement,' an 'alleged defect concerning the allonge [would be] immaterial' if there is adequate evidence that physical delivery effected valid assignment." *Hoyer*, 802 F. Supp. 3d at 469 (quoting *Robinson v. H&R Block Bank, FSB*, No. 12-CV-4196 (SMG), 2013 WL 2356106, at *4 (E.D.N.Y. May 29, 2013)).

Defendants cite *Rutty* for the proposition that "[e]ven where allonges are offered, defects in the assignment chain independently defeat standing." Opp'n, ECF 32, at 4. However, in *Rutty*, the allonges themselves were defective because they were "undated, and no other evidence establishe[d] that the original lender assigned the note" to the plaintiff in that action. 720 F. App'x at 29. By contrast, here, although the third allonge is also undated, *see* Note & Allonges, ECF 30-4, at ECF p. 23, Plaintiff submitted the sworn declaration of its attorney and special servicer, Richard J. Galati, Jr., stating that he received the Note and allonges prior to commencing this foreclosure action, *see* Galati Decl., ECF 30-23, ¶¶ 6–11. As discussed above, "proof of physical possession" is "sufficient on its own" to prove Plaintiff's standing as a holder, and has no impact on the legal effect of the assignments. *Melina*, 827 F.3d at 223.

Defendants' citation to *Hoyer* is distinguishable for similar reasons. In that case, the court vacated its earlier summary judgment order on reconsideration, finding that the affidavits that originally formed the plaintiff's evidentiary basis for summary judgment were entitled to "almost no weight" in light of "myriad discrepancies" between the evidence in the summary judgment record and publicly available

documents. *Hoyer*, 802 F. Supp. 3d at 456, 469. There, however, the plaintiff's evidence stated that the first assignment took place more than seven months *after* the date of the second assignment, and "public documents reflect an almost entirely different chain of assignments of the mortgage and note than that proffered by Plaintiff." *Id.* at 454, 457. Here, the discrepancies Defendants highlight evince, at worst, imprecise drafting that was caught and corrected prior to the commencement of this action. Defendants cite no case, and the Court can find none, holding that manually crossing out the date of execution of an allonge and initialing the changes is fatal to Plaintiff's status as an assignee, let alone as a holder. *Cf. Koznitz I*, 2025 WL 1512953, at *3 (finding that the allonges must "trace an unbroken chain of transfer to the last prior possessor," and the defendant-appellant "raised no genuine issue as to any fraud or gap in the chain of transfer").

Here, because Plaintiff has established its standing as a holder, it need not also demonstrate its standing as an assignee. *See Gordon*, 97 N.Y.S.3d at 292. In light of Plaintiff's standing, the Court finds that there is no dispute of material fact on Plaintiff's *prima facie* entitlement to foreclosure on the basis of the summary judgment record.

**C. Compliance with RPAPL § 1303**

As discussed above, RPAPL § 1303 requires a mortgagee seeking to foreclose on a residential property to comply with certain notice procedures. It is not meaningfully disputed that Plaintiff posted the § 1303 notice, as required by New York law, when it first initiated this action. Pl.'s 56.1, ECF 30-1, ¶ 60; Galati Decl., ECF 30-23, ¶¶ 15–16; *cf.* Defs.' Counter 56.1, ECF 32-1, ¶ 60 (citing Wiener Decl., ECF 32-3, ¶¶ 3–10 (disputing the adequacy of the Notice of Default)). Specifically, on June 11, 2025, Plaintiff's process server posted two copies of the Notice to Tenants of Building in Foreclosure to the only exit and entrance door of the Property. Affirmation of Service, ECF 30-28, at ECF p. 2

(stating that one copy was firmly affixed "conspicuously on the front main door of the building" and one copy was affixed "conspicuously on the window to the right of the main entrance door" and providing a photograph of same). The notice was printed on yellow colored paper, that is, a color other than the color of the Summons and Complaint, the title of the notice appeared in bold, 20-point type, and the text appeared in bold, 14-point font. *Id.*; Galati Decl., ECF 30-23, ¶¶ 15–16; *see* RPAPL § 1303 Notice, ECF 30-27. Accordingly, the Court finds that Plaintiff has complied with the statutory notice requirements. *See Fed. Nat'l Mortg. Ass'n v. Injawe Inc.*, No. 24-CV-3051 (TAM), 2025 WL 3707090, at *8 (E.D.N.Y. Dec. 22, 2025).

Given that Plaintiff has demonstrated compliance with both the common law and statutory requirements for its *prima facie* case with facts that are not subject to genuine dispute, and in the absence of further defenses from Defendants,[11] the Court finds that Plaintiff has shown its entitlement to summary judgment. Accordingly,

---

[11] The Court notes that on July 10, 2025, Defendants filed an answer to the complaint containing five affirmative defenses. Answer, ECF 9. However, Defendants' affirmative defenses, which are essentially boilerplate, do not adhere to the Second Circuit's pleading standards, set forth in *GEOMC Co. v. Calmare Therapeutics Inc.*, which require a defendant raising affirmative defenses "to support these defenses with some factual allegations to make them plausible." 918 F.3d 92, 99 (2d Cir. 2019); *see also Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 187 (E.D.N.Y. 2022) (noting that counterclaims must meet the plausibility standards set forth in *Twombly* and *Iqbal*).

Additionally, although Defendants have advanced arguments consistent with two of their affirmative defenses (that "Plaintiff lacks standing to maintain this action" and "[t]here has been no default herein") on summary judgment — which the Court has rejected for the reasons discussed *supra* — Defendants have not advanced arguments or evidence in support of their other three affirmative defenses. Answer, ECF 9, ¶¶ 102–105; *compare id.* ¶¶ 94–101 (stating that (1) "Plaintiff's complaint fails to set forth a cognizable cause of action upon which relief may be granted"; (2) "subject matter jurisdiction is lacking" because "there is no complete diversity in this action"; and (3) "the Court lacks personal jurisdiction over Defendant" because "service of process was not properly effected" (capitalization modified)), *with* Opp'n, ECF 32. Accordingly, the Court deems these affirmative defenses "to be abandoned and ineffective to defeat summary judgment." *E. Sav. Bank v. Robinson*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 482024, at *5 (E.D.N.Y. Feb. 4, 2016).

Plaintiff's motion for summary judgment against Defendants Flushing Realty and Wiener is granted.

**III. Default Judgment**

Plaintiff has also moved for a default judgment against Defendant ECB. *See* Mot., ECF 30. Here, Plaintiff named ECB as a defendant because ECB's liens against Flushing Realty made it a necessary party to this foreclosure action. Compl., ECF 1, ¶ 10; *see* Schedule A, ECF 1, at ECF p. 27; *see also* RPAPL § 1311(3); *Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919 (ENV) (RER), 2019 WL 3716190, at *1 (E.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 3714582 (E.D.N.Y. Mar. 13, 2019). Plaintiff now seeks a default judgment solely against Defendant ECB, which has failed to respond to this action. Mem., ECF 30-34, at 12–13.

Plaintiff represents that the ECB holds various open judgments against the Property. Compl., ECF 1, ¶ 10. Plaintiff also alleges that the ECB's interest in the Property accrued subsequent to, and is therefore subject and subordinate to, Plaintiff's Mortgage lien. *Id*. Plaintiff also avers that the ECB has filed various liens and/or judgments against the Property over the years, as set forth in Schedule A of the complaint. Schedule A, ECF 1, at ECF p. 27. Plaintiff has pled the violation number, judgment dates, and the original amounts. *Id.* Although Plaintiff did not include a detailed description of the violations, the Court finds that this information is sufficient

to meet the RPAPL's heightened pleading standards with respect to ECB.[12] *See Cunningham*, 754 F. Supp. 3d at 286–87 (finding that a complaint referencing all violation dates, penalty amounts, and statuses to be sufficient); *Wells Fargo Bank N.A. v. 366 Realty LLC,* 806 F. Supp. 3d 356, 369–70 (E.D.N.Y. 2025) (finding that Plaintiff's submission of violation numbers, order dates, notice dates, docket dates, and balances due met the heightened pleading standards); *see also Fed. Nat'l Mortg. Ass'n v. 204 Ellery St., LLC,* No. 23-CV-5343 (ENV) (RML), 2025 WL 1309875, at *14 (E.D.N.Y. Mar. 6, 2025).

ECB has not submitted any opposition to Plaintiff's assertions or motion. *See generally* Docket. Consequently, the Court accepts Plaintiff's allegations as true and grants Plaintiff's motion for default judgment against Defendant ECB. *See Onewest Bank v. Serbones*, No. 14-CV-7281 (RJD) (MDG), 2016 WL 1295197, at *4 (E.D.N.Y. Mar. 7, 2016) (recommending default judgment be entered against the ECB after the plaintiff served the ECB with process and with copies of its motion for default judgment), *report and recommendation adopted as modified sub nom. OneWest Bank, N.A. v. Serbones*, 2016 WL 1306545, at *4 (E.D.N.Y. Mar. 31, 2016).

**IV. Requested Relief**

Plaintiff seeks a judgment ordering the foreclosure and sale of the Property, and identifies the following outstanding debts owed to CFSP: (1) $4,253,901.95 in

---

[12] The Court takes judicial notice of the fact that, as of the date this opinion was issued, the Property had eight unpaid violations listed on the OATH website, all of which are dated after the 2015 mortgage. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (explaining that courts may take judicial notice of "documents retrieved from official government websites" or other government records from such sites) (collecting cases). The Property's violations are viewable on the OATH Ticket Finder website, at https://a820-ecbticketfinder.nyc.gov/searchHome.action? (last accessed September 3, 2026), and at https://a836-citypay.nyc.gov/citypay/ecb (last accessed September 3, 2026). The amount due to ECB, which includes a recently issued violation, totaled approximately $2,500.00 as of the date this opinion was issued.

outstanding principal; (2) $26,099.46 in unpaid interest incurred between December 1, 2024, through December 31, 2024, based on a 7.125% interest rate; (3) $95,860.50 in unpaid interest incurred between January 1, 2025 through April 28, 2025, based on a 6.875% interest rate; (4) $770,428.91 in default interest incurred between April 29, 2025, and March 20, 2026, based on a 20% interest rate; and (5) $6,223.85 in late charges incurred between January 2025 and April 2025, minus a $1.58 Debt Service Reserve fee, totaling $5,152,513.09. Mem., ECF 30-34, at 14; Cato Decl., ECF 30-2, at ECF p. 18.

For the reasons discussed above, Plaintiff has demonstrated its entitlement to the various categories of damages it seeks. However, given the length of time between when Plaintiff's motion was filed and the date of this opinion, Defendants' total indebtedness has likely changed. Mem., ECF 30-34, at 14 (noting that the full amount owed as of March 21, 2026, includes $5,152,513.09, plus interest accruing, until the entry of the Judgment of Foreclosure and Sale); *see* Letter, ECF 34.

Given the Court's grant of summary judgment, the Court directs Plaintiff to submit an updated proposed order of foreclosure and sale as to Defendants Flushing Realty and Wiener. The Court further directs Plaintiff to make an application for a referee to supervise the sale. Following the selection of the referee and sale of the property, Plaintiff shall file a proposed judgment, along with an affidavit from the appointed referee, concerning any amounts due to Plaintiff following the sale.

## CONCLUSION

For the reasons outlined above, the Court grants Plaintiff's motion for summary judgment against Defendants Flushing Realty and Wiener and for default judgment against Defendant ECB, and finds that an order of foreclosure and sale shall issue. By **September 17, 2026**, Plaintiff is directed to submit an updated proposed order as to Defendants Flushing Realty and Wiener. Plaintiff is directed to serve a copy of this

memorandum and order on the defaulting Defendant ECB and to file proof of service with the Court by **September 10, 2026.**

**SO ORDERED.**

Dated: Brooklyn, New York
September 3, 2026

Taryn A. Merkl
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE